Not for Publication

**United States District Court**
**for the District of New Jersey**

| | |
|---|---|
| COLLEEN KROL<br><br>              Plaintiff,<br><br>V.<br><br>STEVEN CRAWFORD; JOHN DOES #1 to #5, individually and as officers and employees of the Township of Mendham; JOHN DOES #6 to #10, individually and as officers and employees of the State of New Jersey; and the TOWNSHIP OF MENDHAM, a New Jersey municipal corporation<br><br>              Defendants. | Civil No:  12-7456 (KSH)<br><br><br><br>**OPINION** |

**Katharine S. Hayden, U.S.D.J.**

On December 5, 2012, plaintiff Colleen Krol, filed a 16 count complaint against individual, unnamed members of the Mendham Township police department; Steven Crawford, the chief of police; and the Township of Mendham. On September 30, 2013, this Court dismissed the claims against the Township of Mendham and its employees and officers and preserved Krol's constitutional claims against Crawford. (D.E. 15, "Opinion Motion to Dismiss," 5.) Pursuant to the *Fed. R. Civ. P.* 12(b)(6) pleading standard that only requires the complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009), the Court found that "[r]estrictions on protests can implicate first amendment rights, which in turn can be vindicated via 42 U.S.C. § 1983," and that "Crawford directly interacted with Krol and his culpability is straightforwardly alleged."

1

(Id.) Although Krol was invited to amend to state claims against the dismissed defendants, no amended complaint was filed. This case now comes before the Court on a motion for summary judgment (D.E. 36) filed by Crawford, the sole remaining defendant. The motion for summary judgment is unopposed.

Krol, a self-described "zealous advocate" against bear hunting, arranged to protest in front of Governor Christopher Christie's residence at 46 Corey Lane in Mendham Township, New Jersey. (D.E. 36-3, Ex. A, "Compl." ¶¶ 6, 10-11.) Krol had participated in similar demonstrations, and as a result, she was well known to government officials. (Compl. ¶ 6.) Near the governor's residence Corey Lane is narrow, with heavy traffic, no sidewalks, and no traffic lights. (D.E. 36-5, "Crawford Certification," ¶¶ 6-8; D.E. 36-3, Ex. D "Krol Deposition," T104:4-14.) In December 2010, before Krol began her protests, she contacted Crawford's office at the Mendham police department and requested that she be allowed to protest "between three and five or maybe later" in the evening. (Krol Deposition T27:6-9, T28-T29: 16-8.) Crawford told Krol that she could protest between "one and three" in the afternoon and walk back and forth in front of the governor's property, but could not sit in the road or on the property. (Id.; Crawford Certification, ¶¶ 10, 12-14.) Crawford states that the "time and parameters were agreed upon by both Krol and the Mendham Township Police Chief." (D.E. 36-3, Ex. B.) Krol conducted her protest for five days, from December 6, 2010 to December 10, 2010. (Krol Deposition, T54:4-9, T69: 4-6.)

On December 17, 2010, Krol called the Mendham Township police department to provide notice that she intended to begin her protests, again in front of the governor's home, this time asking for different conditions. (Crawford Certification ¶ 15; Compl. ¶ 14.) She informed the police that she had a disability which made it difficult for her to walk and asked permission

2

to sit on the property. (Crawford Certification ¶ 15.) Krol and the Mendham police "had to negotiate a new place to sit." (Krol Deposition T72:20-25.) The police selected a location "approximately a quarter of a mile down from the Governor's house" with a wide, grassy shoulder from which Krol could safely sit and protest. (Crawford Certification ¶ 25.) The police reiterated that she did not have permission to sit or go onto the property. (Krol Deposition T132:2-8.) On December 25, 2010 Krol protested from the new location, which was about 250 feet away from her original walking route. (Krol Deposition T85:5-154, T87:3-8.) She parked her car another 250 feet from that spot. (Krol Deposition T87:16-20.) Police Sergeant Johnson told Krol that this location was appropriate given safety concerns. (Krol Deposition T78:2-6, T83:3-8; Crawford Certification ¶¶ 17-19.) In her deposition Krol stated that "I don't think there is any issue of safety that the police had to worry about on the roadway with me because I saw people walking, riding, driving for all kinds of purposes." (Krol Deposition T121:21-25.)

Krol alleges that Crawford violated her rights under the first amendment of the United States Constitution and article one of the New Jersey Constitution, Counts 1-2, and the Americans with Disabilities Act (ADA) and the New Jersey Law Against Discrimination (NJLAD), Counts 11-12. Crawford moves to dismiss them all. "The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to summary judgment." *Fed. R. Civ. P.* 56(c). Krol did not file opposing papers, and this Court deems all of the supported factual assertions as true. *See Crymes v. Atlantic* County, 2006 WL 1582064 (D.N.J. June 2, 2006) (Simandle, J.) (holding "[i]f the nonmoving party fails to oppose the motion by evidence such as written objection, memorandum, or affidavits, the court will accept as true all material facts set forth by the moving party with appropriate record

support"). Accepting Crawford's supported factual allegations, the Court sees no genuine issue of material fact, and rules on the merits of this case as a matter of law.

In his motion, Crawford argues that Krol's first amendment rights were not violated as there were "[l]egitimate safety concerns" which allowed for the imposition of "minimal time, place and manner restrictions." (Motion for Summary Judgement, 2.)  "Time, place, manner regulations of protected speech are valid if: (1) they are justified without reference to the content of the regulated speech; (2) they are narrowly tailed to serve a significant or substantial government interest; and (3) they leave open ample alternative channels for communication." *Ben Rich Trading, Inc. v. City of Vineland*, 126 F.3d 155, 160 (3d Cir. 1997).  The federal and state constitution claims are both adjudicated under this standard since the state relies on "federal constitutional principles in interpreting the free speech clause of the New Jersey constitution." *Hamilton Amusement Ctr. V. Verniero*, 156 N.J. 254, 264 (1998).

The time, place, and manner restrictions placed on Krol's protests were appropriate. First, the regulations imposed by Crawford were not content-based as there are no allegations that the restrictions were based on Krol's views against the bear hunt. Second, the government had a significant interest in securing Krol's safety and preventing traffic hazards. *See e.g. Snell v. City of York, PA*, 564 F.3d 659 (3d Cir. 2009) (holding "that the government interest in promoting traffic safety and traffic flow … while not 'compelling,' were significant").  The conditions that forbid Krol from trespassing on private property, sitting on the side of a busy street, or demonstrating during traffic and in bad light, are tailored to specifically address legitimate safety concerns. Finally, there were alternatives:  Krol had earlier exercised her rights during December, 2010 by protesting while walking in front of Christie's house and then sitting on the shoulder during daylight hours. Accordingly, Count 1 and 2 are dismissed.

The remaining counts against Crawford assert that Crawford violated the ADA and NJLAD by "not allowing Plaintiff to sit, and forcing her to park at a distance." (Compl. ¶ 56.) Both statutes require that Krol show that (1) she has a disability; (2) she is qualified to meet the "essential eligibility requirements for receipt of services or participation in programs or activities provided by a public entity;" and (3) that because of her disability she was excluded from the services or activity provided by a public entity. 42 U.S.C. § 12131; *see Millington v. Temple Univ. Sch. Of Dentistry*, 261, Fed. Appx. 363, 365 (3d Cir. 2008); *see also D.G. v. Somerset Hills Sch. Dist.,* 559 F. Supp 2d 484, 502-03 (D.N.J. 2008) (Cooper, J.) (holding "NJLAD relies on the same analytical framework as the Americans With Disabilities Act"). As Crawford explains, Krol was not limited because of her disability; rather, limitations were imposed because of safety concerns. (Motion for Summary Judgment, 22.) Although Krol complains about the distance between the relocated spot and where she had been protesting, she fails to adduce any facts suggesting that there was a deliberate attempt to curtail her rights based on her disability. Instead, the record amply supports Crawford's assertions about traffic and safety concerns. Counts 11 and 12 are dismissed because there is simply no factual basis to show Krol was discriminated against as a result of her disability

For the foregoing reasons, the Court grants Crawford's motion for summary judgment.

Date: November 17, 2015

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.